**Geri OSTERMAN, Plaintiff,**

v.

**Robert L. PAULK et al., Defendants.**

**No. 73–1429–CIV–CA.**

United States District Court,
S. D. Florida.

Aug. 3, 1974.

As Amended Sept. 4, 1974.

Steven Wisotsky, of Legal Services of Greater Miami, Inc., Miami, Fla., for plaintiff.

Alan H. Rothstein, City Atty. of the City of Miami, and S. R. Sterbenz, Asst. City Atty., Miami, Fla., for defendants.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ATKINS, District Judge.

The plaintiff's motion for summary judgment posits the question of whether the City of Miami can constitutionally disqualify [1] or reject a person for employment as a Clerk II because she "failed"[2] a polygraph examination regarding "any current use, within the last 6 months, of marijuana." In plaintiff's response to a question asked by the polygraph examiner she denied any such use of marijuana.

In opposition to the motion, the City urges the standards for employment as a police officer. The polygraph examina-

tion of applicants for such duties is designed, the City's Chief of Police asserts in an affidavit, to verify the accuracy of statements made by the applicant concerning his own qualifications in areas directly related to his fitness and ability to perform in a position of trust. While such inquiry may well be related to the high duty of law enforcement, as so ably articulated by Chief Garmire, the Court views such standards as inapplicable to the job here involved.

■ In the field of public employment the government must act "in a manner which is neither arbitrary nor unreasonable." The principle was made clear by the Fifth Circuit Court of Appeals in Thompson v. Gallagher, 489 F. 2d 443 (5th Cir. 1973):

Just as a public employee does not give up his First Amendment right when he begins receiving a pay check from the government, neither does he give up his right to due process of law. The Fourteenth Amendment stands for the proposition that the government must act, when it acts, in a manner which is neither arbitrary nor unreasonable. 489 F.2d at 447.

See also, Schware v. Board of Bar Examiners, 353 U.S. 232, 238–239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); Slochower v. Board of Education, 350 U.S. 551, 555, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Wieman v. Updegraff, 344 U.S. 183, 192, 73 S.Ct. 215, 97 L.Ed. 216 (1952).

In Lindquist v. City of Coral Gables, 323 F.Supp. 1161, 1163 (S.D.Fla.1971), it was held that it "is well settled that a State may not arbitrarily refuse an individual the opportunity to . . . work in public service."

■ In furtherance of the above principal there must be a rational nexus between any off-duty or prior conduct,

1. Plaintiff has successfully completed the written examination and personal interview and was found to be qualified and eligible for the job. She was advised she could start the following Monday and all that remained was a pre-employment polygraph examination and a physical examination. She had previously testified that she passed the Army physical but does suffer from allergies which affect

her breathing patterns and could have some effect on the results of the polygraph test.

2. The Civil Service Board report regarding the marijuana question states only "Deception was revealed and not resolved." No other proof tending to dispute plaintiff's denial of any use of marijuana within the previous six months was submitted by the City.

or requirements, and the duties of the job in question. Sugarman v. Dougall, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973); Castro v. Beecher, 459 F.2d 725, 733 (1st Cir. 1972), Thompson v. Gallagher, *supra*. In *Lindquist, supra*, a fireman was discharged because his sideburns exceeded the length allowed by departmental regulations. The District Court held that the regulation was constitutionally impermissible because the City had failed to show any relationship between the plaintiff's sideburns and the performance of his job.

The Florida Legislature has recognized that prior unlawful conduct is not a bar to public employment unless it is job-related. Florida Statutes, § 112.011, provides:

A person shall not be disqualified from employment by the state or any of its agencies or political subdivisions . . . solely because of a prior conviction of a felony . . . (except that an applicant may be excluded) "if the felony for which [he is] convicted directly relates to the position of employment sought . . . ."

The anomaly of the City's position is shown when it is recognized that a prior conviction for an unrelated felony could not bar the plaintiff's employment while a single use of marijuana within the previous six months (if established) renders her ineligible.

Even if the City had demonstrated that plaintiff did use marijuana at any time within the six months preceding her application for employment, it is difficult to determine that a single use could possibly bear upon the applicant's fitness for employment as a Clerk II. If she were seeking appointment as a police officer some relationship could be seen. The National Commission on Marijuana and Drug Abuse (1972) reported:

The classification of any drug effect as either beneficial or harmful often greatly depends on the values the classifier places on the expected effects.

This is especially relevant with respect to the psychoactive drugs such as tranquilizers, stimulants, coffee, cigarettes, alcohol, marihuana and other licit or illicit drugs. For all of these drugs, the weights of benefit and harm are difficult to determine when viewed merely in terms of their stated effects. *Id.* at 60.

On the subject of whether marijuana was intrinsically "dangerous" or "harmful," the National Commission said:

Looking only at the effects on the individual, there is little proven danger of physical or psychological harm from the experimental or intermittent use of the natural preparations of cannabis, including the resinous mixtures commonly used in this country. *Id.* at 80–81.

The pamphlet on drug abuse, issued by the Executive Office of the President (1972) states:

As ordinarily used in the United States marijuana does not lead to physical dependence; therefore it cannot be considered addicting. Furthermore, it is not a narcotic . . . . *Id.* at 23.

There is nothing in marijuana itself that produces a need to use other drugs . . . . *Id.* at 24.

■ I have been referred to no respectable authority which suggests that a single use of marijuana during the six months preceding an application for employment renders the applicant unfit to perform duties as a Clerk. Without such a rational relationship the conclusion is inescapable that the Civil Service Board's standards with respect to any use of marijuana during the subject period is irrational as to this plaintiff and the job for which she applied, and is therefore unconstitutional as a denial of due process of law.

■ Defendants also urge that plaintiff has failed to exhaust her administrative remedies provided by the Civil Service Board. Such procedural requirement has no application where the

action for vindication of federal constitutional rights is against a state agency. Monroe v. Pape, 365 U.S. 167, 181, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Education, 373 U.S. 668, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); Moreno v. Henekel, 431 F.2d 1299 (5 Cir. 1970).

 It is fundamental that the Civil Service Board may promulgate regulations bearing directly on the quality of its employees and job applicants. The City is entitled to recruit and maintain a work force composed of fit and competent employees. The judicial system may not be used as a protection for employees or job applicants who are incompetent, or otherwise unqualified to hold public employment. Nevertheless, the Board may not adopt regulations that are overly broad.

The Supreme Court has held that statutes affecting constitutional rights must be drawn with "precision." NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). The statutes must be "tailored" to serve their legitimate objectives. Shapiro v. Thompson, 394 U.S. 618, 631, 89 S.Ct. 1322, 22 L. Ed.2d 600 (1969).

The most definitive statement of the principles which govern is found in Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960):

> In a series of decisions this Court has held that, even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgement must be viewed in the light of *less drastic means* for achieving the same basic purpose. (emphasis added)

In Cleveland Board of Education v. LeFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), it was held that the mandatory maternity leave provisions of the school board violated the Due Process Clause for want of a rational nexus between the arbitrary cut-off date and the state's interest in preserving continuity of instruction. In reaching its decision, the Court condemned the unnecessarily broad scope of the regulation:

> While it might be easier for the school boards to conclusively presume that all pregnant women are unfit to teach past the fourth or fifth month or even the first month, of pregnancy, administrative convenience alone is insufficient to make valid what otherwise is a violation of due process of law. The Fourteenth Amendment requires the school boards to employ alternative administrative means, which do not so broadly infringe upon basic constitutional liberty, in support of their legitimate goals. 94 S.Ct. at 799 (emphasis added).

Another recent opinion invalidating an overly broad employment qualification is the Fifth Circuit case of Thompson v. Gallagher, *supra*, in which the court held that "a general category of 'persons with other than honorable discharges' is too broad to be called 'reasonable' when it leads to automatic dismissal from any form of municipal employment." 489 F.2d at 449.

Applying the above criteria, the regulations of the City of Miami Civil Service Board which permanently disqualify from employment as a Clerk II a person who has used marijuana during the last six months do not pass constitutional muster. Less restrictive means are available to the Civil Service Board to accomplish the legitimate objective of recruiting and maintaining a fit work force.

The plaintiff's motion for Summary Judgment is granted. Plaintiff's status with the City of Miami immediately prior to taking the polygraph test is reinstated and she is restored to her place on the employment roster. Without regard to the results of the polygraph examination she is to be permitted to take a physical examination. No back pay is awarded.